# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| MICHAEL C. HAVILL,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C09-3031-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the court for the third time on judicial review of decisions by the Commissioner denying the plaintiff's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income under Title XVI of the Act. The plaintiff Michael C. Havill filed his initial applications for benefits on April 20, 2001, alleging a disability onset date of January 31, 2001. Havill claimed he was disabled due to spurs in his back; arthritis, neck, back, and left arm problems; depression; and alcoholism. His applications were denied initially and on reconsideration, and Havill sought judicial review in this court.

On September 17, 2004, the court entered an order reversing the Commissioner's decision denying Havill benefits, and remanding the case for further proceedings. Significantly, for purposes of the current review, the court found the Administrative Law Judge ("ALJ") had conducted a thorough review of the record and fairly weighed the evidence, and the ALJ's credibility assessment and determination of Havill's residual functional capacity were supported by substantial evidence in the record. However, the court found the ALJ erred in relying on the testimony of a Vocational Expert ("VE"), because jobs the VE opined Havill could perform were inconsistent with Havill's limitations as found by the ALJ.

The ALJ had determined Havill's residual functional capacity to be as follows:

> The claimant has had the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting more than 20 pounds maximum or 10 pounds repeatedly. He can stand 60 minutes at a time. He can sit for up to six hours in an eight-hour workday. He can walk 60 minutes at a time and can stand or walk up to six hours in an eight-hour workday. He should avoid repetitive bending, stooping, squatting, kneeling, crawling and climbing. He can occasionally handle with his left upper extremity. The work should not require fine hearing acuity in the presence of background noise. He is not able to do very complex-technical work, but is able to do more than simple, routine, repetitive work. The work should not require use of independent judgment and should not require very close attention to detail. He may have occasional supervision and is able to work at a regular pace. He should avoid stress above a mild to moderate level.

(A.R. 20) Jobs listed by the VE all required frequent handling, and therefore they did not meet the limitation that Havill can handle with his left upper extremity only occasionally.

The court remanded the case with instructions for the ALJ to obtain additional vocational expert testimony to determine whether Havill is able to perform jobs that are consistent with all of his limitations as set forth in the ALJ's residual functional capacity.[1]

Upon remand, the ALJ made a residual functional capacity determination that was substantially similar to the earlier assessment. However, the ALJ again erred in relying on vocational expert testimony that did not consider the full range of Havill's limitations. Havill again sought judicial review, and the Commissioner filed a motion for remand, acknowledging the ALJ's failure to comply with the court's earlier order. The court remanded the case again, "for the *sole* purpose of questioning a vocational expert

---

[1] In the interim between filing the action in this court and the court's decision, Havill had filed new applications for benefits, which also were denied. His new applications were consolidated with those already pending for consideration on remand. Havill filed a subsequent application, and indicates in his brief that he was found to be disabled with a disability onset date of August 25, 2005. *See* Doc. No. 7, pp. 11, 14.

2

regarding whether Havill 'can perform jobs that are consistent with all of his limitations as set forth in the Administrative Law Judge's residual functional capacity determination[.]'" Order dated January 10, 2008 (R. 834-36) at p. 3 (R. 836) (emphasis in original).

A third administrative hearing was held on November 10, 2008, before a different ALJ. The ALJ made an RFC determination that was substantially similar to the two previous determinations, but with the added limitation that Havill would need "to sit for a short time after standing for an hour, which limit is more restrictive and more favorable to [Havill]." (R. 805-06) The ALJ posed a hypothetical question to a vocational expert that was consistent with Havill's limitations as found by the ALJ. (*See* R. 1041-43) The VE testified an individual with those limitations could not return to any of Havill's past relevant work, but would be able to perform jobs such as parking lot attendant, a light and unskilled job with approximately 440 positions in Iowa, and 98,000 positions nationwide; unskilled mail clerk, with approximately 600 positions in Iowa, and 40,000 nationwide; and inserting machine operator, a light and unskilled job with approximately 200 positions in Iowa, and over 16,000 nationwide.

The VE acknowledged that no published information exists regarding what percentage of those jobs can be performed by an individual who can do frequent handling with one hand but only occasional handling with the other hand. She stated that her opinion regarding how many jobs would be available for someone with Havill's limitations was based on her "work experience working with people . . . over the last 20 plus years and then seeing like the types of jobs that they have done with the specific limitations that they have had." (R. 1043-44) The VE indicated the numbers of jobs she had reported were based on "the Occupational Employment Quarterlies and then . . . census information from the State of Iowa," as well as "Workforce Development Information." (R. 1044) However, she admitted that the data from these sources lump together a number of jobs that include various exertional levels, so in deciding what percentage of the listed jobs

would be available to a particular claimant, the VE bases her opinion on her training and experience, job openings she sees in the newspaper, job openings that are available when she is working with people and trying to place them in jobs, and sometimes conversations with potential employers. She stated she had not done a job analysis on any of the particular jobs she had indicated someone with Havill's limitations could perform, but she had talked with two or three employers in the previous five years about what was required for those specific positions.

The ALJ found as follows regarding the VE's testimony on this issue:

> The claimant's representative asked if any or all the jobs cited require more than occasional handling according to the [Dictionary of Occupational Titles]. The vocational expert responded that they all required frequent handling according to the DOT. She stated the DOT did not tell whether a person could use a non-dominant hand as an assist. The vocational expert then provided an explanation for the seeming conflict/departure from the DOT which the undersigned finds reasonable and persuasive. The vocational expert based her opinion on her extensive professional experience and education. The claimant is right-hand dominant. The vocational expert testified that the claimant could perform frequent handling with his right hand. The vocational expert has talked to several employers specifically about the parking lot job within the prior 5 years, and has talked to other employers over the years concerning other jobs. The numbers are based partially on her 20 years of experience and overall numbers. She has had people who have been injured and hired as parking lot attendants – the numbers cited are a combination of numbers from the Occupational Employment Quarterlies, Census information for the State of Iowa and Workforce Development information; what she has actually seen people do, and numbers of job openings she has seen when assisting people and trying to find them employment.
>
> The claimant's representative has provided no affirmative evidence such as testimony of another expert to dispute the testimony of the vocational expert at the hearing, and has provided no persuasive argument or other evidence that the

4

> expert's testimony is unreasonable and cannot be relied on. The claimant's representative stipulated to the vocational expert's qualifications at the beginning of the hearing.
>
> The undersigned finds the jobs indicated by the vocational expert to be representative of a significant number in the state and national economies/region and several regions during the time in question.

(R. 807-08)

The ALJ held that although Havill cannot return to any of his past relevant work, he can make a successful adjustment to other work that exists in significant numbers in the national economy, and he therefore is not disabled. (R. 808)

Havill continues to argue that the ALJ erred in relying on the VE's testimony. He argues that "[w]hen there is an apparent unresolved conflict between vocational expert testimony and the [*Dictionary of Occupational Titles*], the ALJ must elicit a reasonable explanation for the conflict before relying on the vocational expert testimony to support a determination or decision that the individual is or is not disabled[, and] [t]he ALJ must explain in his decision how he resolved the conflict." Doc. No. 7, p. 8 (citing SSR 00-4p; *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir4. 2003); *Closson v. Astrue*, No. C06-4095-MWB, 2008 WL 504013 (N.D. Iowa Feb. 21, 2008); SSR 96-8p).

Havill argues further that although the Eighth Circuit Court of Appeals has provided little guidance on what evidence is required to support a vocational expert's testimony, the Seventh Circuit Court of Appeals has. He relies on *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002), to support his argument that in the present case, the ALJ failed to make the proper inquiry to determine whether the VE's conclusions were reliable. Doc. No. 7. In *Donahue*, the court held that when the basis of a VE's conclusions is questioned at the hearing where the VE testifies, "then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446. The court cited Social

Security Ruling 00-4p, which requires an ALJ to explain how any conflict between the VE's testimony and the *Dictionary of Occupational Titles* has been resolved. *Id.*

In the present case, the ALJ simply indicated he found the VE's "explanation for the seeming conflict/departure from the DOT" to be "reasonable and persuasive." (R. 807) Under *Donahue*, the ALJ's explanation likely would not be deemed adequate. *See Donahue*, 279 F.3d at 445-47 (discussing "the appropriate interaction between the *Dictionary* and a vocational expert," and when an ALJ "must be entitled to accept testimony of a vocational expert whose experience and knowledge in a given situation exceeds that of the *Dictionary*'s authors").

The Eighth Circuit Court of Appeals held, in 1995, that "when expert testimony conflicts with the *DOT*, the *DOT* controls." *Smith v. Shalala*, 46 F.3d 45, 46 (8th Cir. 1995) (citing, *inter alia*, *McCoy v. Schweiker*, 683 F.2d 1138, 1145-146 (8th Cir. 1982) ("'in the general run of cases' the *DOT* is more reliable than a vocational expert"; other citations omitted). The *Donahue* court observed that the *Smith* ruling would have made the *DOT* "an independent source of listed impairments, giving the *Dictionary*'s team of authors a power that Congress has bestowed on the Commissioner of Social Security." *Donahue*, 279 F.3d at 445. However, as the *Donahue* court noted, the Eighth Circuit later retreated from its position in *Smith*. *Id.* (citing Eighth Circuit cases that post-dated *Smith*). Indeed, in *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007), the Eighth Circuit held that "a claimant's 'reliance on the *DOT* as a definitive authority on job requirements is misplaced' because '*DOT* definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'" *Page*, 484 F.3d at 1045 (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (citation omitted).

In the present case, Havill does not expressly argue that the *DOT* is controlling. Instead, he argues the ALJ erred in failing to reconcile the fact that the VE's departure from the *DOT* was largely unsupported. The VE testified that her estimated numbers of

jobs available to someone with Havill's specific limitations were based on her experience in placing individuals in jobs, job openings she sees in the newspaper, and two or three phone calls with potential employers over a period of five years. The court finds the VE failed to support her opinions with adequate data or reasoning. *See McKinnie v. Barnhart*, 368 F.3d 907, 910-11 (7th Cir. 2004) ("We have held that any data or reasoning underlying the VE's bottom line must be 'available on demand' so that the claimant may test the reliability of the VE's testimony.") (quoting *Donahue*, 279 F.3d at 446).

The ALJ noted that Havill's attorney "provided no affirmative evidence such as testimony of another expert to dispute the testimony of the vocational expert at the hearing. . . ." (R. 807) If, as here, a claimant's RFC as determined in step four of the sequential evaluation process will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). However, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). Because the VE's testimony was not adequately supported, the ALJ could not rely on the VE's testimony at this stage of the evaluation, and the burden remained on the

Commissioner to prove that other work exists in sufficient numbers that Havill can perform. Saying the VE's opinions are acceptable simply because the claimant's attorney failed to produce contrary evidence is error.

The ALJ further noted Havill's attorney had stipulated to the VE's qualifications at the hearing. (R. 808) Stipulating to the VE's professional qualifications is not the same as stipulating to the VE's conclusions. Simply because an individual is qualified to testify as an expert in a particular field does not mean the expert's opinions must be accepted without question. Once Havill raised the issue of the conflict between the VE's opinions and the *DOT*, the ALJ had a duty to make sufficient inquiry to resolve the conflict. The court finds the ALJ failed to do so, and that failure was error.

The court further finds that the current evidence of record "overwhelmingly supports" an immediate finding of disability and award of benefits. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). Accordingly, the Commissioner's decision denying Havill's applications for benefits is **reversed**, and this matter is remanded for calculation and payment of benefits for the period between Havill's application and the date he was found to be disabled on subsequent applications; i.e., January 31, 2001, through August 25, 2005.

**IT IS SO ORDERED.**

**DATED** this 3rd day of March, 2010.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT